THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| **Federal Deposit Insurance Corporation,** as Receiver of Integrity Bank of Alpharetta, Georgia, <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **Steven M. Skow, Alan K. Arnold, Douglas G. Ballard, Clinton M. Day, Joseph J. Ernest, Donald C. Hartsfield, Jack S. Murphy, and Gerald O. Reynolds,** <br><br> **Defendants.** | **Civil Action No. 1:11-CV-0111** |

### ANSWER OF DEFENDANTS JOSEPH J. ERNEST, DONALD C. HARTSFIELD, JACK S. MURPHY AND GERALD O. REYNOLDS

Defendants Joseph J. Ernest, Donald C. Hartsfield, Jack S. Murphy, and Gerald O. Reynolds, all former independent directors of Integrity Bank of Alpharetta, Georgia ("Integrity Bank" or the "Bank"), (collectively, the "Defendants"), by and through the undersigned counsel, file their Answer to the Complaint filed by the Federal Deposit Insurance Corporation (the "FDIC").

## FIRST DEFENSE

In its Complaint, the FDIC as receiver, articulates for the first time, a theory about the cause of Integrity Bank's failure that is devoid of any reference to the FDIC's role in the Bank's closing.  Contrary to the FDIC's theory, evidence will show that but for the FDIC's lax oversight and arbitrary demands that Integrity Bank write-down, or de-value, certain loans, the Bank would still be in operation. As such, the FDIC's claims are barred because the alleged damages to which the FDIC claims it is entitled were a direct and proximate result of its own conduct.

The record in this case, which will include the FDIC's own examination reports, loan files, board meeting minutes, and minutes of meetings between the Defendants and FDIC representatives, will show that the FDIC expressly approved the business plan followed by the Defendants, and tacitly approved the Defendants' decisions with respect to the very loans the FDIC now claims should not have been made.  In addition, the record will show that neither the Defendants, nor the FDIC's regulators, were alone in believing that Integrity Bank's loan portfolio was sound. As Credit & Compliance Financial Resources, Inc., an independent, third-party loan review consultant run by former FDIC employees, found upon review of Integrity Bank's loan portfolio in April 2006, "[t]he quality of the loans reviewed [was] considered satisfactory."

Since its inception, state and federal regulators have conducted regular examinations of Integrity Bank to evaluate its performance in six key areas represented by the "CAMELS" acronym: Capital adequacy, Asset quality, Management practices, Earnings performance, Liquidity position and Sensitivity to market risk.  At the conclusion of these examinations the FDIC issued a rating for each CAMELS component and an overall composite score.  The ratings used by the FDIC ranged from "1" to "5". With "1" being the most favorable rating, and "Asset quality" being one of the most critical areas in the FDIC's evaluation of the overall condition of a bank, Defendants were pleased in 2004 when the regulators rated the Bank's Asset quality a "2."   Over the course of the following year, Defendants improved the Bank's loan portfolio, and in 2005, the regulators recognized the Defendants' sound business judgment and the Bank's higher quality loan portfolio by rating the Bank's Asset quality a "1."   In 2006, regulators once again confirmed their approval of the Bank's loan portfolio and assigned the Bank's Asset quality a CAMELS rating of "1."   It was not until July 2007, just thirteen months before the FDIC took over the Bank as receiver, that the FDIC first informed Defendants that it would downgrade Integrity Bank's Asset quality and composite rating to a "4."

The timing of the FDIC's decision to downgrade the Bank's Asset quality rating and composite CAMELS rating is not insignificant.   In mid-2007 the country was facing an economic crisis from which it is just beginning to recover. Among the states hardest hit was Georgia.   As real estate values plummeted, the number of borrowers that were not able to meet their loan obligations increased dramatically.   Consequently, hundreds of community banks in the state were struggling to maintain adequate capital.   At the same time, bank regulators, including those from the FDIC, were under increasing pressure to explain their failure to predict and prepare for the depth of the economic crisis.   Rather than offer an explanation, the FDIC radically and unjustly reversed its prior approval of capital levels, asset quality, management, equity, liabilities and sensitivity to risk in an effort to deflect responsibility for its inadequate oversight of banks.   Such was the case with Integrity Bank in 2007 when the FDIC downgraded its Asset quality and composite CAMELS rating from a "1" to a "4."

With this downgrade came arbitrary regulatory constraints and demands that severely constrained the Defendants' ability to save the Bank.  For example, in the summer of 2007 the FDIC forced Defendants to write-down approximately $100 million in performing loans, despite the fact that the borrowers on many of these loans had never missed a payment.  As a result, the Bank's capital was depleted to

a level that the regulators then swiftly deemed "unsafe and unsound."  Cloaked with this label, Integrity Bank was unable to convince otherwise interested investors to infuse the Bank with capital sufficient to overcome the regulatory hurdles put in place by the FDIC, and not surprisingly, the FDIC was appointed receiver of Integrity Bank on August 29, 2008.

Thus the losses to the FDIC's insurance fund that the FDIC now claims were caused by the Defendants' alleged mis-management and poor oversight of the Bank, were in fact, caused by the FDIC's arbitrary and capricious decisions resulting in an unjustified depletion of the Bank's capital and by the FDIC's failure to take responsibility for its own poor oversight.  As a result, the FDIC's claims should be given no deference and should be rejected.

In short, the FDIC is engaging in "Monday morning quarterbacking" of the worst kind.  The FDIC approved Integrity Bank's game plan on an annual basis. Now, after an unforeseen real estate meltdown on a magnitude not experienced in this country since the Great Depression, the FDIC takes the position that the game plan that the FDIC repeatedly approved was unsound.  The Court should reject the FDIC's revisionist history and reject its claims.

## SECOND DEFENSE

Plaintiff's Complaint fails to state a claim upon which relief may be granted.

**THIRD DEFENSE**

Plaintiff's claims are barred, in whole or in part, by Plaintiff's failure, neglect, or refusal to mitigate its damages.

**FOURTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the Defendants' reasonable reliance on bank management.

**FIFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the conduct challenged by the Plaintiff was reasonable and justified under the circumstances.

**SIXTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because the conduct challenged by the Plaintiff constitutes a reasonable exercise of business judgment.

**SEVENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, because any and all actions taken by Defendants with respect to Plaintiff were taken in good faith.

**EIGHTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the Defendants' reasonable reliance on bank examiners.

**NINTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the Defendants' reasonable reliance upon independent, professional or expert advice.

**TENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the Defendants' reasonable conformity to the business custom and usage of other similar institutions.

**ELEVENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the Defendants reasonable efforts to salvage the Bank's loan portfolio and capital levels.

**TWELFTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, by the Exculpation Provision in Integrity Bank's Articles of Incorporation.  A true and correct copy of the Articles of Incorporation is attached hereto at Exhibit "A".

**THIRTEENTH DEFENSE**

Plaintiff's claims are barred, in whole or in part, to the extent they attribute specific loan committee decisions to a Defendant who was not present when said decision was made.

### FOURTEENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, under the doctrine of estoppel.

### FIFTEENTH DEFENSE

Defendants respond to the specific allegations contained in the enumerated paragraphs of the Complaint as follows:

### Responding to Preamble and "Preliminary Statement"

Defendants deny the allegations in the preamble and preliminary statement of the Complaint, except that Defendants admit that Plaintiff brings this action in its capacity as receiver of Integrity Bank of Alpharetta, Georgia.  Defendants specifically deny that they were negligent, grossly negligent and/or breached their fiduciary duties by approving the loans at issue in this case.

### Responding to "The Parties"

1.

Defendants deny that Integrity Bank was being operated in an "unsafe and unsound manner," and deny that Integrity Bank has any valid claims against Defendants for negligence, gross negligence, breaches of fiduciary duty or any other legal duties.  Defendants admit the remaining allegations contained in paragraph 1 of the Complaint on information and belief.

2.

With the exception of the last sentence, Defendants admit the allegations in paragraph 2.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the last sentence in paragraph 2 of the Complaint.

3.

With the exception of the last sentence, Defendants admit the allegations in paragraph 3.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the last sentence in paragraph 3 of the Complaint.

4.

With the exception of the last sentence, Defendants admit the allegations in paragraph 4.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the last sentence in paragraph 4 of the Complaint.

5.

With the exception of the last sentence, Defendants admit the allegations in paragraph 5.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the last sentence in paragraph 5 of the Complaint.

6.

Defendants admit the allegations contained in paragraph 6 of the Complaint.

7.

Defendants admit the allegations contained in paragraph 7 of the Complaint.

8.

Defendants admit the allegations contained in paragraph 8 of the Complaint.

9.

Defendants admit the allegations contained in paragraph 9 of the Complaint.

## Responding to "Jurisdiction and Venue"

10.

To the extent a response is required, Defendants admit that this Court has jurisdiction over this matter, but deny the remaining allegations.

11.

To the extent a response is required, Defendants admit that this Court has personal jurisdiction over the Defendants, but deny the remaining allegations.

12.

To the extent a response is required, Defendants admit that venue is proper in this judicial district, but deny the remaining allegations.

### Responding to "Allegations of Fact Applicable to All Counts
### Integrity Lacked a True Credit Function"

13.

Defendants deny that they presided over the Bank without implementing credit risk management policies and procedures.  To the contrary, Defendants hired an experienced former FDIC employee to manage the Bank's credit risk.  Further responding, Defendants admit the Bank was state-chartered and approved by the Georgia Department of Banking and Finance to open for business in November 2000.  Defendants further state that the "Loan Policy" was approved by the Georgia Department of Banking and Finance and the FDIC as part of the charter approval process.  The "Loan Policy" is a written document that speaks for itself, and to the extent the allegations in paragraph 13 of the Complaint are inconsistent with the "Loan Policy," the Defendants deny those allegations.  Defendants deny the remaining allegations of paragraph 13 of the Complaint.

14.

The "Loan Policy" is a written document that speaks for itself, and to the extent the allegations in paragraph 14 of the Complaint are inconsistent with the "Loan Policy," the Defendants deny those allegations.  Defendants deny the remaining allegations in paragraph 14 of the Complaint.

15.

Paragraph 15 of the Complaint purports to state legal conclusions and general opinions to which no response is required. To the extent a response is required, Defendants deny the allegations of paragraph 15, except Defendants admit that they appropriately delegated certain lending responsibilities to officers and other senior management of the Bank, hired experienced former FDIC employees to manage the Bank's credit risk, and sought out and obtained independent, third-party advice concerning the Bank's loan portfolio.

16.

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint regarding the loan officers' personal conduct or beliefs, and therefore deny same. Responding further, the "Loan officer presentations" speak for themselves, and to the extent the allegations in paragraph 16 are inconsistent with the "Loan officer presentations," the Defendants deny those allegations. The remaining allegations of Paragraph 16 of the Complaint purport to state legal conclusions or general opinions to which no response is required. To the extent a response is required, Defendants deny the remaining allegations contained in paragraph 16 of the Complaint.

17.

Defendants admit the allegations contained in the first and second sentences of paragraph 17 of the Complaint.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the third sentence of paragraph 17, and therefore deny same.  Defendants deny the remaining allegations contained in paragraph 17 of the Complaint.  By way of further response, Defendants state that the Bank received information from certain third-party loan auditors in January 2006 regarding its loan portfolio.  Defendants further state that the loan auditors reported that the Bank's loan portfolio was "satisfactory."  Defendants further state that the FDIC examined the Bank in 2005 and 2006 to assess the Bank's overall financial condition and rated the Bank's "Asset Quality" as a "1," or "strong," the best rating that can be assigned by the FDIC.  Defendants further state that the FDIC concluded that the Bank's risk management, monitoring, and reporting practices were "accurate," and the Bank's loan documentation and underwriting standards were "satisfactory."

18.

With the exception of the allegations that the Bank made loans to borrowers in the Atlanta metropolitan area and in some markets in South Carolina and Florida, Defendants deny the allegations in paragraph 18 of the Complaint.

Defendants admit that the Bank made loans to borrowers in the Atlanta metropolitan area and in some markets in South Carolina and Florida.

19.

Paragraph 19 of the Complaint states general theoretical conclusions and opinions to which no response is required.  To the extent a response is required, Defendants admit that the Bank made loans to residential and commercial real estate developers secured, in some cases, by the real estate/project being financed, but deny the remaining specific allegations contained in paragraph 19 of the Complaint.

20.

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the third and fourth sentences of paragraph 20, and therefore deny same.  The remaining allegations contained in paragraph 20 of the Complaint state general theoretical conclusions and opinions to which no response is required.  To the extent a response is required, Defendants admit, generally, that loans made to residential and commercial real estate developers generated income from interest and fees and had low delinquency rates. Defendants deny the remaining allegations in paragraph 20 of the Complaint.

**Responding to "The Defendants Disregarded Regulatory Warnings"**

21.

Defendants deny the allegations contained in paragraph 21 of the Complaint. By way of further response Defendants state that the FDIC gave Integrity Bank a CAMELS "1" rating, the highest rating available, for Asset quality in 2005 and 2006. Defendants further state that in 2006, a third-party loan review consultant, run by former FDIC employees, deemed the Bank's loan portfolio "satisfactory".

22.

The 2003, 2004 and 2005 Reports of Examination are written documents that speak for themselves, and to the extent the allegations in paragraph 22 of the Complaint are inconsistent with the 2003, 2004 and 2005 Reports of Examination, the Defendants deny those allegations. Defendants deny the remaining allegations in paragraph 22 of the Complaint, except Defendants admit that prior to 2007, the Bank was always well capitalized and additional capital was often raised through issuance of Integrity Bancshares stock. By way of further response, Defendants state that, in 2007, after Defendant Reynolds discovered and disclosed the fraudulent conduct of certain of the Bank's management, the FDIC arbitrarily demanded that the Bank write down approximately $100 million in loans, despite the fact that many of the loans were not delinquent and the borrowers had never

missed a payment.  As a result of the FDIC's arbitrary and unnecessary demands, the Bank was unable to obtain supplemental funding.  Defendants further state that, in 2008, the Bank located an investment group that was prepared to inject millions of dollars of capital into the Bank provided the FDIC would also provide certain financial assistance. Had the FDIC provided the assistance requested, it would have saved the alleged losses to the FDIC Insurance fund about which Plaintiff now complains.  Despite the Bank's officers and directors imploring the FDIC to consider the alternative and cost effective solution, the FDIC refused to approve the investment.

23.

The May 2003 through June 2007 Reports of Examination are written documents that speak for themselves, and to the extent the allegations in paragraph 23 of the Complaint are inconsistent with these documents, the Defendants deny those allegations.  Defendants deny the remaining allegations in paragraph 23 of the Complaint.  Further responding, the Defendants state that the FDIC examined the Bank in 2005 and 2006 to assess the Bank's overall financial condition and rated the Bank's "Asset Quality" as a "1," or "strong," the best rating that can be assigned by the FDIC.  Defendants also state that in 2005 and 2006 the FDIC concluded that the Bank's risk management, monitoring, and reporting practices

were "accurate," and the Bank's loan documentation and underwriting standards were "satisfactory."

24.

The 2003 through 2007 Reports of Examination and the "Loan Policy" are written documents that speak for themselves, and to the extent the allegations in paragraph 24 of the Complaint are inconsistent with these documents, Defendants deny the allegations. Defendants deny the remaining allegations in paragraph 24 of the Complaint. Further responding, the Defendants state that the FDIC examined the Bank in 2005 and 2006 to assess the Bank's overall financial condition and rated the Bank's "Asset Quality" as a "1," or "strong," the best rating that can be assigned by the FDIC.

25.

The 2003 through 2007 Reports of Examination are written documents that speak for themselves, and to the extent the allegations in paragraph 25 of the Complaint are inconsistent with the Reports of Examination, the Defendants deny those allegations. Defendants deny the remaining allegations in paragraph 25 of the Complaint. Further responding, the Defendants state that in the April 2005 Report of Examination the FDIC assessed the Bank's overall financial condition and rated the Bank's "Asset Quality" as a "1," or "strong," the best rating that can

be assigned by the FDIC.  Defendants further state that they consistently sought and relied upon independent, third-party advice regarding the Bank's loan portfolio.

26.

The 2003 through 2006 Reports of Examination are written documents that speak for themselves, and to the extent the allegations in paragraph 26 of the Complaint are inconsistent with the Reports of Examination, the Defendants deny those allegations.  Defendants further state that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memoranda, the DLC approved loans to various entities. To the extent the allegations in paragraph 26 are inconsistent with the applicable loan memoranda and DLC meeting minutes, Defendants deny the same.

27.

The "DLC minutes" and the 2007 Report of Examination are written documents that speak for themselves, and to the extent the allegations in paragraph 27 of the Complaint are inconsistent with these documents, Defendants deny the allegations.  Further responding, the remaining allegations of paragraph 27 of the Complaint purport to state legal conclusions or opinions to which no response is

required.   To the extent a response is required, Defendants deny the remaining allegations contained in paragraph 27 of the Complaint.

28.

Paragraph 28 of the Complaint states general theoretical conclusions and opinions to which no response is required.   To the extent a response is required, Defendants deny the allegations in paragraph 28 of the Complaint.

29.

Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first and second sentences of paragraph 29, and therefore deny same.  Further responding, the April 2004 Report of Examination and "pre-2007" Reports of Examination speak for themselves, and to the extent the allegations in paragraph 29 of the Complaint are inconsistent with those documents, Defendants deny those allegations.   Defendants deny the remaining allegations in paragraph 29 of the Complaint.

30.

The May 2006 Report of Examination is a written document that speaks for itself, and to the extent the remaining allegations in paragraph 30 are inconsistent with the May 2006 Report of Examination, the Defendants deny those allegations. The remaining allegations of paragraph 30 of the Complaint state general

theoretical conclusions and opinions to which no response is required.  To the extent a response is required, Defendants deny the remaining specific allegations contained in paragraph 30 of the Complaint.  Defendants further state that in the May 2006 Report of Examination, after examining the Bank, the FDIC assessed the Bank's overall financial condition and rated the Bank's "Asset Quality" as a "1," or "strong," the highest rating that can be assigned by the FDIC.

31.

The "Loan Policy" and the 2005 through 2007 Reports of Examination speak for themselves, and to the extent the allegations in paragraph 31 are inconsistent with these documents, the Defendants deny the allegations. Defendants specifically deny the fourth sentence of paragraph 31 of the Complaint, and state by way of further response, that Defendants hired experienced, former FDIC employees to enhance oversight of the Bank's processes.

32.

The "Loan Policy," 2004 through 2007 Reports of Examination, and "loan officer presentations" speak for themselves, and to the extent the allegations in paragraph 32 are inconsistent with these documents, Defendants deny the allegations.  Defendants are without knowledge or information sufficient to form a

belief as to the truth of the remaining allegations contained in paragraph 32, and therefore deny same.

33.

The "Loan Policy" and  2003 through 2007 Reports of Examination speak for themselves, and to the extent the allegations in paragraph 33 are inconsistent with these documents, Defendants deny the allegations.   Further responding, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 33 of the Complaint, and therefore deny same.

34.

The "Loan Policy", and the May 2006 and June 2007 Reports of Examination speak for themselves, and to the extent the allegations in paragraph 34 are inconsistent with these documents, Defendants deny the allegations. Defendants deny the remaining allegations in paragraph 34 and state by way of further response that Defendants hired experienced former FDIC employees, an independent, third-party loan review consultant, and independent auditors to advise the Defendants and enhance oversight of the Bank's processes.

35.

Defendants admit they each signed Reports of Examination in 2003, 2004, 2005, 2006, and 2007.  The June 2007 Report of Examination speaks for itself, and to the extent the allegations in paragraph 35 are inconsistent with this document, Defendants deny the allegations.  Defendants deny the remaining allegations in paragraph 35.

36.

Bancshares' December 31, 2006, and May 10, 2007, Securities and Exchange Commission filings speak for themselves, and to the extent the allegations in paragraph 36 are inconsistent with these documents, Defendants deny the allegations.  Defendants deny the remaining allegations in paragraph 36 of the Complaint.

37.

On information and belief, Defendants admit that nearly 80% of the Bank's total loan portfolio was concentrated in ADC loans in September 2007.  By way of further response, Defendants state that in 2007 the percentage of ADC loans in the Bank's total loan portfolio was substantially the same as it was in 2005 and 2006, when the FDIC examined the Bank to assess the Bank's overall financial condition and rated the Bank's "Asset Quality" as a "1," or "strong," the highest rating that

can be assigned by the FDIC.  With the exception of the last sentence, Defendants deny the remaining allegations in paragraph 37 of the Complaint.  The Defendants specifically deny that the loan officers were inadequately supervised.  The Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in the last sentence of paragraph 37, and therefore deny same.

38.

   With the exception of the last sentence, Defendants deny the allegations contained in paragraph 38 of the Complaint.  The Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in the last sentence of paragraph 38, and therefore deny same.  By way of further response, Defendants state that in 2007 Defendant Reynolds discovered and disclosed the fraudulent conduct of certain of the Bank's management that contributed to the financial issues of the Bank.  Although the FDIC had conducted financial examinations of the Bank, its assets and procedures, for years, the FDIC never discovered the fraudulent conduct or any significant problems with the Bank prior to the 2007 Report of Examination.  The FDIC continually concluded that the Bank's asset quality was strong.  Similarly, the Georgia Department of Banking and Finance, the Bank's outside loan auditor, the

Bank's internal auditors, and the Bank's external auditors all had access to the records of the Bank and never discovered the fraudulent conduct or any significant problems with the Bank.  After discovery of the fraudulent conduct of certain of the Bank's management, the Defendants put in place a plan that would have permitted the Bank to survive.  However, the FDIC arbitrarily demanded that the Bank write down approximately $100 million in loans, despite the fact that many of the loans were not delinquent and the borrowers had never missed a payment. The FDIC's arbitrary and unnecessary demands, directly contributed to the ultimate failure of the Bank.

### Responding to "Approval of Loss Loans"

39.

Defendants admit that the table in paragraph 39 of the Complaint purports to summarize the loans that are the focus of the FDIC's complaint against Defendants.  Except as expressly admitted or otherwise expressly stated in their responses to paragraphs 40 through 78 of the Complaint, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 39 of the Complaint, and therefore deny same.

40.

**Responding to "Q4 Industries – 400550400"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $2,850,000 loan commitment on or about May 25, 2005. The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 40 speak for themselves, and to the extent the allegations in paragraph 40 are inconsistent with these documents, Defendants deny the same. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 40 of the Complaint, and therefore deny the remaining allegations.

41.

The allegations contained in paragraph 41 of the Complaint purport to state legal conclusions to which no response by Defendants is required. To the extent a response is required, Defendants deny the allegation in subparagraph (5) of paragraph 41. Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 41 and therefore deny same. Defendants further state that at all times they reasonably relied on bank

management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 41.

42.

The Bank's documents concerning the loan identified in paragraph 42 speak for themselves, and to the extent the allegations in paragraph 42 are inconsistent with these documents, Defendants deny the same. Defendants deny the remaining allegations in paragraph 42.

43.

**Responding to "Diversified Executive Crestview – 400496100"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $1,088,000 loan commitment on or about January 5, 2005. The loan memorandum, DLC meeting minutes concerning the loan referenced in paragraph 43, and the "Courthouse records" referenced in paragraph 43 speak for themselves, and to the extent the allegations in paragraph 43 are inconsistent with these documents, Defendants deny the same.

44.

The allegations contained in paragraph 44 of the Complaint purport to state legal conclusions to which no response by Defendants is required. To the extent a

response is required, Defendants deny the allegations in subparagraphs (1), (2), (5) and (6) of paragraph 44.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 44, and therefore deny same.   Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 44.

45.

**Responding to "Diversified Executive Crestview – 400496100"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $1,000,000 increase in a loan commitment on or about December 14, 2005.  The loan memorandum and DLC meeting minutes concerning the increased commitment referenced in paragraph 45 speak for themselves, and to the extent the allegations in paragraph 45 are inconsistent with these documents, Defendants deny the same.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 45 of the Complaint, and therefore deny the remaining allegations.

46.

The allegations contained in paragraph 46 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraphs (6) and (7) of paragraph 46.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 46 and therefore deny the same.  Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 46.

47.

**Responding to "Diversified Executive Crestview – 400496100"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $1,000,000 increase to a loan commitment on or about February 1, 2006.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 47 speak for themselves, and to the extent the allegations in paragraph 47 are inconsistent with these documents, Defendants deny the same.

48.

The allegations contained in paragraph 48 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraphs (5) and (6) of paragraph 48.  Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 48 and therefore deny the same.  Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 48.

49.

**Responding to "Diversified Executive Crestview – 400705800"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $10,300,000 loan commitment on or about July 13, 2005.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 49 speak for themselves, and to the extent the allegations in paragraph 49 are inconsistent with these documents, Defendants deny the same.

50.

The allegations contained in paragraph 50 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraphs (1), (4), (5) and (6) of paragraph 50.  Defendants are with knowledge sufficient to form a belief as to the truth of the remaining allegations in paragraph 50 and therefore deny the same.  Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 50.

51.

**Responding to "Diversified Executive Myrtle Beach – 400581000"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $8,500,000 loan commitment on or about July 27, 2005.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 51 speak for themselves, and to the extent the allegations in paragraph 51 are inconsistent with these documents, Defendants deny the same.

52.

The allegations contained in paragraph 52 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraphs (4) and (5) of paragraph 52.  Defendants are without knowledge sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 52, and therefore deny the same.  Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 52.

53.

**Responding to "Diversified Executive Myrtle Beach – 400581000"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved an $11,000,000 increase to a loan commitment on or about February 1, 2006.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 53 speak for themselves, and to the extent the allegations in paragraph 53 are inconsistent with these documents, Defendants deny the same. Defendants are without knowledge or information sufficient to form a belief as to

the truth of the remaining allegations contained in paragraph 53 of the Complaint, and therefore deny the remaining allegations.

54.

The allegations contained in paragraph 54 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraphs (5) and (7) of paragraph 54 of the Complaint.   Defendants are without knowledge or information sufficient to form a belief about the remaining allegations in paragraph 54 and therefore deny the same.  Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 54.

55.

**Responding to "Diversified Executive Myrtle Beach – 400581000"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $4,600,000 increase to a loan commitment on or about February 14, 2007.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 55 speak for themselves, and to the extent the allegations

in paragraph 55 are inconsistent with these documents, Defendants deny the same. Defendants deny the remaining allegations in paragraph 55 of the Complaint.

56.

The allegations contained in paragraph 56 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegation in subparagraph (5) of paragraph 56.  Defendants are without knowledge sufficient to form a belief about the remaining allegations in paragraph 56 of the Complaint, and therefore deny the same.  Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 56.

57.

**Responding to "LN Watertank Grove – 400775800"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $562,000 loan commitment on or about May 10, 2006.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 57 speak for themselves, and to the extent the allegations in paragraph 57 are inconsistent with these documents, Defendants deny the same.  Defendants

-33-

are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 57 of the Complaint, and therefore deny the same.

58.

The allegations contained in paragraph 58 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraphs (3) and  (4) of paragraph 58.  Defendants are without sufficient knowledge to for a belief about the remaining allegations in paragraph 58 and therefore deny the same. Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 58.

59.

**<u>Responding to "LN Financial – 400841800"</u>**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $19,200,000 loan commitment on or about November 15, 2006.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 59 speak for themselves, and to the extent the allegations in paragraph

59 are inconsistent with these documents, Defendants deny the same.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 59 of the Complaint, and therefore deny the same.

60.

The allegations contained in paragraph 60 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraphs (3) and (5) paragraph 60.  Defendants are without knowledge sufficient to form a belief about the remaining allegations in paragraph 60 and therefore deny the same.  Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 60.

61.

<strong><u>Responding to "LN Financial - 400858600<br/>LN Citrus Grove – 400858800"</u></strong>

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $4,700,000 loan commitment on or about December 20, 2006.  The loan memorandum and DLC meeting minutes concerning the loan referenced in

paragraph 61 speak for themselves, and to the extent the allegations in paragraph 61 are inconsistent with these documents, Defendants deny the same.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 61 of the Complaint, and therefore deny the remaining allegations.

62.

The allegations contained in paragraph 62 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegation in subparagraph (3) of paragraph 61 of the Complaint.  Defendants are without information sufficient to form a belief about the remaining allegations in paragraph 62 and therefore deny the same.  Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 62.

63.

**Responding to "LN Groveland – 400879800"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $1,275,000 loan commitment on or about February 21, 2007.  The loan

memorandum and DLC meeting minutes concerning the loan referenced in paragraph 63 speak for themselves, and to the extent the allegations in paragraph 63 are inconsistent with these documents, Defendants deny the same. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 63 of the Complaint, and therefore deny the same.

64.

The allegations contained in paragraph 64 of the Complaint purport to state legal conclusions to which no response by Defendants is required. To the extent a response is required, Defendants deny the allegation in subparagraph (3) of paragraph 64. Defendants are without knowledge sufficient to form a belief about the remaining allegations in paragraph 64 and therefore deny the same. Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 64.

65.

<strong><u>Responding to "Triple N, Inc. – 400822800"</u></strong>

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC

-37-

approved a $2,500,000 loan commitment on or about April 4, 2007. The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 65 speak for themselves, and to the extent the allegations in paragraph 65 are inconsistent with these documents, Defendants deny the same. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 65 of the Complaint, and therefore deny the same.

66.

The allegations contained in paragraph 66 of the Complaint purport to state legal conclusions to which no response by Defendants is required. To the extent a response is required, Defendants deny the allegations in subparagraphs (3) and (4) of paragraph 66. Defendants are without knowledge sufficient to form a belief about the remaining allegations in paragraph 66 and therefore deny the same. Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 66.

67.

**Responding to "Fischer Crossing Development – 400841600"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $8,270,000 loan commitment on or about November 1, 2006. The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 67 speak for themselves, and to the extent the allegations in paragraph 67 are inconsistent with these documents, Defendants deny the same. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 67 of the Complaint, and therefore deny the remaining allegations.

68.

The allegations contained in paragraph 68 of the Complaint purport to state legal conclusions to which no response by Defendants is required. To the extent a response is required, Defendants deny the allegations in subparagraphs (5) and (6) of paragraph 68. Defendants are without knowledge sufficient to form a belief about the remaining allegations in paragraph 68 and therefore deny the same. Defendants further state that at all times they reasonably relied on bank

management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 68.

69.

**Responding to "Chrisley Family Trust – 400417000"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $10,000,000 loan commitment on or about October 18, 2006.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 69 speak for themselves, and to the extent the allegations in paragraph 69 are inconsistent with these documents, Defendants deny the same.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 69 of the Complaint, and therefore deny the remaining allegations.

70.

The allegations contained in paragraph 70 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegation in subparagraph (3) of paragraph 70.  Defendants are without knowledge sufficient to form a belief about the remaining allegations in paragraph 70 and therefore deny the same.

Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 70.

71.

**Responding to "LKC, LLC – 400848200"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $1,500,000 loan commitment on or about December 6, 2006.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 71 speak for themselves, and to the extent the allegations in paragraph 71 are inconsistent with these documents, Defendants deny the same.

72.

The allegations contained in paragraph 72 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraph (3) of paragraph 72.  Defendants are without knowledge sufficient to form a belief about the remaining allegations in paragraph 72 and therefore deny the same.  Defendants further state that at all times they reasonably relied on bank

management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 72.

73.

**Responding to "Deep Water Holdings – 400926800"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $6,930,000 loan commitment on or about May 2, 2007.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 73 speak for themselves, and to the extent the allegations in paragraph 73 are inconsistent with these documents, Defendants deny the same.

74.

The allegations contained in paragraph 74 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraphs (2) and (4) of paragraph 74.  Defendants are without knowledge sufficient to form a belief about the remaining allegations in paragraph 74 and therefore deny the same. Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 74.

75.

## **Responding to "Urban Blu, L.L.C. – 400597000"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $13,000,000 loan commitment on or about June 1, 2005.  The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 75 speak for themselves, and to the extent the allegations in paragraph 75 are inconsistent with these documents, Defendants deny the same.   The allegation in subparagraph (4) of paragraph 75 purports to state legal conclusion to which no response is required.   To the extent a response is required Defendants deny the allegations in subparagraph (4) of paragraph 75.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 75 of the Complaint, and therefore deny the same.   Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 75.

76.

**Responding to "Urban Blu, L.L.C. – 400597000"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $1,700,000 loan commitment increase on or about October 21, 2005. The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 76 speak for themselves, and to the extent the allegations in paragraph 76 are inconsistent with these documents, Defendants deny the same. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 76 of the Complaint, and therefore deny the same.

77.

**Responding to "Urban Blu, L.L.C. – 400597000"**

Defendants admit that based on information presented to the DLC by an Account Officer, and as set forth in the applicable loan memorandum, the DLC approved a $2,500,000 loan commitment increase on or about February 21, 2007. The loan memorandum and DLC meeting minutes concerning the loan referenced in paragraph 77 speak for themselves, and to the extent the allegations in paragraph 77 are inconsistent with these documents, Defendants deny the same. Defendants

are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 77 of the Complaint, and therefore deny the same.

78.

The allegations contained in paragraph 78 of the Complaint purport to state legal conclusions to which no response by Defendants is required.  To the extent a response is required, Defendants deny the allegations in subparagraph (4) of paragraph 78.  Defendants are without knowledge sufficient to form a belief about the remaining allegations in paragraph 78 and therefore deny the same. Defendants further state that at all times they reasonably relied on bank management, acted in good faith and reasonably exercised sound business judgment with respect to the loan referenced in paragraph 78.

79.

The allegations contained in paragraph 79 of the Complaint purport to state a legal conclusion to which no response by Defendants is required.  To the extent a response is required, the Defendants deny the allegations contained in paragraph 79 of the Complaint.

## RESPONDING TO "CLAIMS FOR RELIEF"

## RESPONDING TO "COUNT I"

### Responding to "Negligence and Gross Negligence"

80.

Defendants incorporate and re-allege the responses and denials in paragraphs 1 through 79 as if fully set forth herein.

81.

Paragraph 81 of the Complaint purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that the "directors and/or officers" of Integrity Bank owed fiduciary duties to the Bank, but deny the remaining allegations.

82.

Defendants deny the allegations contained in paragraph 82 of the Complaint.

83.

Defendants deny the allegations contained in paragraph 83 of the Complaint.

84.

Paragraph 84 of the Complaint purports to state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 84 of the Complaint.

85.

Paragraph 84 of the Complaint purports to state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 84 of the Complaint.

## RESPONDING TO "COUNT II"

### Responding to "Breach of Fiduciary Duties"

86.

Defendants incorporate and re-allege the responses and denials in paragraphs 1 through 85 as if fully set forth herein.

87.

Paragraph 87 of the Complaint purports to state a legal conclusion to which no response is required.  To the extent a response is required, Defendants admit that the Defendants owed fiduciary duties to the Bank, but deny the remaining allegations.

88.

Paragraph 88 of the Complaint purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that the Defendants owed fiduciary duties to the Bank, but deny the remaining allegations.

89.

Paragraph 89 of the Complaint purports to state legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that the Defendants owed fiduciary duties to the Bank, but deny the remaining allegations.

90.

Defendants deny the allegations contained in paragraph 90 of the Complaint.

91.

Paragraph 91 of the Complaint purports to state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 91 of the Complaint.

92.

Paragraph 92 of the Complaint purports to state a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in paragraph 92 of the Complaint.

### **Responding to "Wherefore" Clause**

Defendants deny that Plaintiff is entitled to any relief from Defendants.

## ANSWERING ALL ALLEGATIONS

Defendants deny any allegations contained in the headings used in the Complaint.  To the extent that any heading in the Complaint is repeated in this Answer, it is for ease of reference only and should not be construed as an admission to the truth of any matter stated in the heading.  Defendants deny each and every allegation of the Complaint, whether express or implied, that is not specifically and unequivocally admitted herein.  Except as expressly admitted or otherwise expressly stated above, Defendants deny all allegations of Plaintiff's Complaint and deny that Plaintiff is entitled to any relief from Defendants.

WHEREFORE, the Defendants respectfully request:

1.      That the FDIC take nothing by way of its Complaint;

2.      That the FDIC's Complaint be dismissed in its entirety with prejudice;

3.      Trial by jury if the FDIC's Complaint is not dismissed;

4.      That the Defendants be granted their reasonable attorney's fees, costs and expenses; and

5.      That the Court award such other and further relief as it deems just and proper.

This 25th day of March, 2011.

/s/ David L. Balser

**David L. Balser**
Georgia Bar No. 035835
dbalser@mckennalong.com
**Tracy Klingler**
Georgia Bar No. 105450
tklingler@mckennalong.com
**Jeffrey R. Baxter**
Georgia Bar No. 142356
jbaxter@mckennalong.com
**E. Claire Carothers**
Georgia Bar No. 702045
ccarothers@mckennalong.com

MCKENNA LONG & ALDRIDGE LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia  30308
(404) 527-4000
(404) 527-4198     (fax)

*Attorneys for Defendants Joseph J. Ernest,
Donald C. Hartsfield, Jack S. Murphy, and
Gerald O. Reynolds*

## <u>LOCAL RULE 7.1D CERTIFICATION</u>

By signature below, counsel certifies that the foregoing document was prepared in Times New Roman, 14-point font in compliance with Local Rule 5.1B.

/s/ David L. Balser
David L. Balser
Georgia Bar No. 035835
MCKENNA LONG & ALDRIDGE LLP

## CERTIFICATE OF SERVICE

This is to certify that on March 25, 2011, I electronically filed the within and foregoing **Answer of Defendants Joseph J. Ernest, Donald C. Hartsfield, Jack S. Murphy, and Gerald O. Reynolds** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Christopher D. Balch      Aaron M. Danzig
Kyle M. Keegan         Chris D. Kiesel
Dustin R. Bagwell
Richard Randall Edwards, III

I further certify that on this date, I served a true and correct copy of the foregoing on the following non-ECF participants by email, addressed as follows:

Jeanne T. Simkins, *jshollis@shlglaw.com*
Robert R. Ambler, Jr., *rambler@wcsr.com*
Jennifer S. Collins, *Jennifer.Collins@wcsr.com*
Frank M. Young III, *fmy@hsy.com*
Kirk D. Smith, *kds@hsy.com*
Paul A. Piland, *paul@cochranedwardslaw.com*

                */s/ David L. Balser*
                David L. Balser
                Georgia Bar No. 035835
                MCKENNA LONG & ALDRIDGE LLP