IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FDIC, as receiver of INTEGRITY BANK of Alpharetta, Georgia, | |
| Plaintiff, | CIVIL ACTION NO. |
| v. | 1:11-CV-0111-SCJ |
| STEVEN SKOW, ALAN ARNOLD, DOUGLAS BALLARD, CLINTON DAY, JOSEPH ERNEST, DONALD HARTSFIELD, JACK MURPHY, and GERALDO REYNOLDS, | |
| Defendants. | |

## ORDER

This case is before the Court on Defendants Skow's, Arnold's, Ballard's, and Day's Motions to Dismiss [28], [30], [32], and [36]; Defendants Ernest's, Hartsfield's, Murphy's, and Reynolds's Motion for Judgment on the Pleadings [33]; Plaintiff's Motion to Strike [45]; Defendants' Motion to Stay Discovery [48]; Plaintiff's Motion for Scheduling Order [74]; and Joint Motion for Status Conference [83]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that Defendants' Motions to Dismiss [28], [30], [32], and [36] should be **GRANTED *in part* and DENIED *in part*;** Defendants' Motion for Judgment on the

Pleadings [33] should be **GRANTED** *in part* **and DENIED** *in part*; Plaintiff's Motion to Strike [45] should be **GRANTED** *in part* and **DENIED** *in part*; Defendants' Motion to Stay Discovery [48] should be **DENIED as moot**; Plaintiff's Motion for Scheduling Order [74] should be **GRANTED as modified by the Court**; and the parties' Joint Motion for Status Conference [83] should be **DENIED as moot**.

## BACKGROUND

FDIC ("Plaintiff") filed this lawsuit in its capacity as receiver for Integrity Bank of Alpharetta, Georgia ("Integrity") to recover losses Integrity suffered on loans that were authorized between February, 2005 and May, 2007. (Compl. [1] at 1.) Defendants are former directors and officers of Integrity. (Id. at 2.) As members of its Director Loan Committee ("DLC"), Defendants were responsible for overseeing and maintaining Integrity's credit function. (Id.) In its complaint, Plaintiff alleges that Defendants failed to fulfill their duties by pursuing an unsustainable rapid growth strategy, which involved high risk lending concentrated in speculative real estate ventures. (Id. at 2-3.) According to Plaintiff, that strategy resulted in over $70 million in losses to Integrity in conjunction with the decline of the real estate market in 2007. (Id.)

In August of 2008, the Georgia Department of Banking and Finance determined that Integrity was operating in an unsafe and unsound manner, and secured a court

order closing the bank.  (Compl. [1] at ¶ 1.)  Under federal law, the FDIC is responsible for the orderly liquidation of failed banks.  See 12 U.S.C. § 1821(d).  Accordingly, the court that ordered Integrity's closure appointed Plaintiff as its receiver.  (Id.)  In its role as receiver, Plaintiff succeeded to all rights and privileges of Integrity and its shareholders, including any claims against Integrity's former directors for negligence and breach of other duties.  See 12 U.S.C. § 1821(d)(2)(A)(i).

Following Integrity's closure, Plaintiff filed this action asserting claims against Defendants for negligence, gross negligence, and breach of fiduciary duty.  (Id. at ¶¶ 80-92.) [1] Defendants Skow, Arnold, Ballard, and Day have filed motions to dismiss Plaintiff's complaint pursuant to Federal Rule 12(b)(6) and a related motion to stay discovery.  (Defs.' Mots. to Dismiss [28], [30], [32], and [36] and Mot. to Stay Discovery [48].)  Defendants Ernest, Hartsfield, Murphy, and Reynolds has filed a motion for judgment on the pleadings [33].  Plaintiff has filed a motion to strike several affirmative defenses asserted in the Answer and a motion for a scheduling order concerning discovery.  (Pl.'s Mot. to Strike [45] and Mot. for Scheduling Order [74].)  There is also a joint motion for status conference.  (Joint motion for status conf. [83].)  All of these motions are presently before the Court.

---

[1]Defendants argue that the Complaint actually includes four causes of action in the context of two counts of the complaint: (a) ordinary negligence; (b) gross negligence; c) breach of fiduciary duty based on ordinary negligence; and (d)breach of fiduciary duty based on gross negligence.  (Def. Reply Br. [62] at 3).

## DISCUSSION

### I.  Defendants' Motions To Dismiss and Motion for Judgment on the Pleadings

#### A.  Standard

In deciding a motion to dismiss, the Court assumes that all of the allegations in the complaint are true and construes the facts in favor of the plaintiff. Scott v. Taylor, 405 F.3d 1251, 1253 (11th Cir. 2005).  That said, in order to survive a motion to dismiss a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)).  A claim has "facial plausibility" when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.

A Rule 12(c) motion for judgment on the pleadings for failure to state a claim upon which relief can be granted invokes the same legal analysis as a Rule 12(b)(6) motion to dismiss. See Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.8 (11th Cir. 2002) ("Whether the court examined . . . [count of the complaint] under Rule 12(b)(6) or Rule 12(c), the question was the same: whether the count stated a claim for relief.").

Accordingly, the Court will consider the pending motions to dismiss and for judgment on the pleadings collectively.

The Court further notes that Defendants' dismissal arguments are based upon two grounds in which Defendants Ernest, Hartsfield, Murphy, and Reynolds asserted as affirmative defenses (i.e., exculpation and the business judgment rule) in their Answer. The Eleventh Circuit has held that "'[g]enerally, the existence of an affirmative defense will not support a motion to dismiss.' 'Nevertheless, a complaint may be dismissed under Rule 12(b)(6) when its own allegations indicate the existence of an affirmative defense, so long as the defense clearly appears on the face of the complaint.'" Brown v. One Beacon Ins. Co., 317 F. App'x 915, 916-917 (11th Cir. 2009).

### B.    Analysis

Defendants argue that the Complaint should be dismissed and/or judgment on the pleadings granted on the following grounds: (1) the Bank's Articles of Incorporation exculpate the Defendants from liability for all actions or omissions alleged in the FDIC complaint and (2) the Plaintiff's allegations in support of its claims for ordinary negligence and breach of fiduciary duty are insufficient to rebut the presumption of good faith attached to Defendants' actions under Georgia's business judgment rule.  (Def. Mot. Judg. on Pl., [33-1] at 4 and Def. Reply Brief [61] at 1).[2]  In

---

[2]The Court notes that each defendant named above, has filed his own separate motion to dismiss and/or motion for judgment on the pleadings; however, the motions are based on similar grounds and the Defendants have each incorporated by reference the arguments of the others.  Accordingly, the Court will address the motions in a collective manner.

addition, Defendants Arnold and Ballard raise separate grounds regarding their dates

of service on the board.

1.    Applicability of the exculpatory provisions of the Article of
Incorporation

Defendants argue that Integrity Bank's Articles of Incorporation exculpate

Defendants from liability for monetary damages for breaches of the duty of care

and/or other duties owed as directors.[3]

Plaintiff's claims are governed by both federal and state law. Atherton v.

FDIC, 519 U.S. 213, 227 (1997). Pursuant to the federal Financial Institutions

Reform, Recovery and Enforcement Act of 1989 ("FIRREA"):

> [a] director or officer of an insured depository
> institution may be held personally liable for
> monetary damages in any civil action by, on behalf
> of, or at the request or direction of [the FDIC] . . .
> acting as conservator or receiver . . . for gross
> negligence, including any similar conduct or
> conduct that demonstrates a greater disregard of a
> duty of care (than gross negligence).

12 U.S.C. § 1821(k).

FIRREA refers to state law to define "gross negligence." Id. Section 1821(k)

"does not preempt state laws with lesser liability standards than gross

negligence." FDIC v. Stahl, 89 F.3d 1510, 1516 (11th Cir. 1996).

---

[3]Plaintiff has also filed a Motion to Strike in relation to this defense. The Court will
address the Motion to Strike in the next section of this order, *infra*.

FIRREA was enacted against a background of failed savings associations and corresponding changes in state law designed to limit director liability. Atherton, 519 U.S. at 228.  See also Stahl, 89 F.3d at 1516 (discussing the legislative history of FIRREA).  Its express purpose was to improve the FDIC's ability to recover federal funds spent to rescue failing banks.  Atherton, 519 U.S. at 228-29. To that end, FIRREA set a federal standard that preempts state laws to the extent that those laws insulate bank directors from personal liability for gross negligence in an action brought by the FDIC.  Id. at 227 and Stahl, 89 F.3d at 1516.  Otherwise, pursuant to its express saving provision, FIRREA leaves state law intact.  Id.

Georgia law permits a bank, in its articles of incorporation, to eliminate or limit the personal liability of its directors "**to the shareholders of the bank** . . . to the same extent as a business corporation" incorporated under O.C.G.A. § 14-2-202 O.C.G.A. § 7-1-493(e)(emphasis added).  The business corporation statute, O.C.G.A. § 14-2-202(b)(4) provides in relevant part:

> The articles of incorporation may set forth:
>> A provision eliminating or limiting the liability of a director **to the corporation or its shareholders** for monetary damages for any action taken, or any failure to take any action, as a director, except liability:
>>> (A) For any appropriation, in violation of his or her duties, of any business opportunity of the corporation;
>>> (B) For acts or omissions which involve intentional misconduct or a knowing violation of law;

(C) For the types of liability set forth in Code Section
14-2-832; or

(D) For any transaction from which the director
received an improper personal benefit . . . .

(emphasis added).

Integrity Bank's articles exculpate directors for personal liability to the bank

or its shareholders except with respect to:

(a)    Any appropriation, in violation of his or her duties,
of any business opportunity of the Bank;

(b)    Acts or omissions not in good faith or which involve
intentional misconduct or knowing violation of the law;

(c)    Any transaction from which the director derived an
improper personal benefit; or

(d)    The types of liability set forth in O.C.G.A. § 7-1-494.

(Def. Skow's Mot. to Dismiss [28] at Ex. A, ¶ 9, Doc. No. 28-2, 5.)[4]

---

[4]The Court recognizes Plaintiff's argument that Defendants have failed to establish that the Bank's shareholders adopted the exculpation provision through an amendment to the Articles by a two-thirds vote as required by O.C.G.A. § 7-1-493(e).  (Pl. Consol. Memo [46] at 20, n.2.)  The Court will not decide this issue as a matter of law at this stage of the proceedings.

The Court also recognizes the Articles of Incorporations are not a part of the original Complaint, but are attached to the answer of Defendants Ernest, Hartsfield, Murphy, and Reynold and the Motion to Dismiss of the remaining defendants.  Under applicable authority, the Court has not converted the present motion to a motion for summary judgment.  See Brown v. One Beacon Ins. Co., 317 F. App'x 915, 916-917 (11th Cir. 2009)("When determining a motion to dismiss, a court may consider the complaint, its attachments, and documents attached to the defendant's motion to dismiss if the attached documents are central to the plaintiff's claims and referred to by the plaintiff without converting the motion to a motion for summary judgment.").

Plaintiff, FDIC-R, argues that in its role as receiver of Integrity Bank and by the express terms of O.C.G.A. § 7-1-493(e), the statute has no application to the instant suit, which is not a derivative suit and does not involve the FDIC-R acting as a shareholder.  (Pl. Consol. Memo [46] at 13.)  The Court agrees.

The Court begins "by noting that under well-settled rules of statutory construction, '[w]hen the language of a statute is plain and unambiguous and not leading to an absurd result, it evidences the legislative intent which is not to be contravened.'  In other words, 'we always must presume that the General Assembly means what it says and says what it means.'"  <u>Glass v. Glass</u>, 311 Ga. App. 563, 572, 716 S. E. 2d 611 (2011).  The plain language of O.C.G.A. § 7-1-493(e) allows for the articles of incorporation to eliminate a director's personal liability to its shareholders.  Said statute does not expand this limitation to the bank (or corporation, as in the context of O.C.G.A. § 14-2-202(b)(4)).[5]

The key question in the case *sub judice* is whether the subject suit will yield a director's liability to the bank's shareholders.  As correctly noted by the Plaintiff, the present lawsuit is not a derivative action.  The Eleventh Circuit has held that "[w]hen the FDIC is appointed receiver, it steps into the shoes of the failed

---

[5]The fact that Integrity Bank's Articles of Incorporation expand the exculpation provision to the bank is not determinative, as the Court must rule in accordance with the language of the statute, O.C.G.A. § 7-1-493

institution and takes possession of both the assets and the liabilities." <u>Vernon v. F.D.I.C.</u>, 981 F.2d 1230, 1234 (11th Cir. 1993); <u>see also</u> <u>Trigo v. Federal Deposit Ins. Corp.</u>, 847 F.2d 1499, 1503 n.4 (11th Cir. 1988) ("The FDIC as receiver merely takes the place of any receiver that might be appointed under state law. Consequently, when acting as receiver, the FDIC is governed by state law."). Georgia law provides for a cause of action by a receiver, trustee in bankruptcy, officer, director, judgment creditor, or shareholder [6]against directors or officers of a bank "**to procure for the benefit of the bank** . . . a judgment for the following relief:

> (1) To compel the defendant to account for his official conduct, or to decree any other relief called for by his official conduct, in the following cases:
>> (A) The neglect of, failure to perform, or other violation of his duties in the management of the bank or trust company or in the disposition of corporate assets committed to his charge;
>> (B) The acquisition by himself, transfer to others, loss, or waste of corporate assets due to any neglect of, failure to perform, or other violation of his duties;
>> (C) The appropriation, in violation of his duties, of any business opportunity of the bank or trust company . . . .

O.C.G.A. § 7-1-493(a) and (b) (emphasis added).

---

[6]The Court is unable to uphold the Defendant's argument (Def's Reply Brief [61] at 5) that this statute only provides standing and does not grant a separate cause of action to each type of plaintiff, as the plain language of the statute indicates that if a shareholder brings a cause of action, the shareholder must do so "in accordance with Code Sections 7-1-440 and 7-1-441, relating to derivative actions." O.C.G.A. § 7-1-493(b). There is no such language relating to the receiver. Thus, it appears that the shareholder's cause of action is separate and distinct from the receiver's cause of action.

See also 12 U.S.C. § 1821(k) ("A director or officer of an insured depository institution may be held personally liable for monetary damages in any civil action . . . which action is prosecuted wholly or partially **for the benefit of the Corporation**.") (emphasis added).  Based on the language of these two statutes, the civil action is for the benefit of the Bank and/or the F.D.I.C.

Defendants' argue that "[a]ny liability for breach of a director's duty is ultimately liability to the bank's shareholders."  (Defs's Combined Reply [61] at 4.)  The Defendants further argue that the FDIC is essentially acting on behalf of the shareholders based on the FDIC's statutory duty to pay claims of any shareholders if it prevails.  The Court is unable to uphold the Defendants' argument in its entirety, as the Eleventh Circuit has held that the "FDIC [is] primarily serving as an instrument of the banking industry" when it becomes receiver for a failed bank.  FDIC v. Harrison, 735 F.2d 408, 413 (1984).  In addition, paying obligations of the shareholders is statutorily last in the order of priority of FDIC-R payments, as 12 U.S.C. § 1821(d)(11)(A) provides that any amount realized is to be distributed by the FDIC-R in the following priority: (1) administrative expenses of the receiver, (2) any deposit liability of the institution, (3) any other general or senior liability of the institution, (4) any obligation subordinated to depositors or general creditors, and (5) any obligation to

11

shareholders. 12 U.S.C. § 1821(d)(11)(A). Thus, in the event that Plaintiff prevails, the shareholders will not be paid all of the liability or damages received in this action.

The Court is also unable to uphold the Defendants' argument that elimination of the liability to the shareholders while preserving liability to the bank (or receiver standing in the shoes of the bank) will render the exculpation provision of the statute illusory – as stated above, the Court must give effect to the plain and ordinary meaning of the statutory language and it is presumed that the Georgia Legislature meant what it said when enacting O.C.G.A. § 7-1-493.

Thus, under the federal gross negligence standard (and as defined by Georgia law), the Court finds that Plaintiff has stated a claim for relief for personal liability against Defendants for gross negligence and breach of fiduciary duty based upon gross negligence. Example allegations which support this finding are Plaintiff's allegations that Defendants deliberately pursued a speculative, high-growth lending strategy, the risks of which were compounded by their failure to implement sound lending practices or to exercise appropriate oversight over loan officers and the lending function. (Compl. [1] at ¶¶ 15-20, 28, 31.) According to Plaintiff, these failures resulted in chronic underwriting deficiencies that should have been apparent to Defendants, and that were in fact the subject of repeated

warnings by state and federal regulators beginning in 2003.  (<u>Id.</u> at ¶¶ 21-24, 28, 32.)  Plaintiff further asserts that, despite their awareness of serious problems, Defendants failed to take any corrective action until Integrity was on the verge of closure in 2007.  (<u>Id.</u> at ¶ 36.)  In its Complaint, Plaintiff also alleges that Defendants engaged in repeated and knowing violations of Georgia lending law. Georgia law prohibits a bank from making loans to a single borrower that exceed 25% of the bank's statutory capital base.  <u>See</u> O.C.G.A. § 7-1-285(b).  Plaintiff asserts that Defendants instituted a policy that was specifically designed to circumvent this provision, and that they violated Georgia's lending limits on several of the "loss loans" that are at issue in this case.  (<u>Id.</u> at ¶¶ 25-27, 44-52, 58-66.).

Assuming these allegations are true, a jury might reasonably conclude that Defendants were "grossly negligent" as defined by Georgia law. O.C.G.A. § 51-1-4 ("gross negligence" is the absence of that degree of care "which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances") and <u>Ansley Marine Const., Inc. v. Swanberg</u>,  290 Ga. App. 388, 391, 660 S. E. 2d 6, 9 (2008) ("a claim for breach of fiduciary duty requires proof of three elements: (1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach.").

The Court will address Plaintiff's claims for ordinary negligence and breach of fiduciary duty based upon ordinary negligence in the next section of this order.

The Court is unable to uphold the Defendants' arguments, appearing to require a heightened fact pleading requirement. <u>See</u> <u>Speaker v. U.S. Dep't of Health and Human Serv</u>., 623 F.3d 1371, 1380 (11th Cir. 2010)(<u>Twombly</u> does not impose a heightened fact pleading requirement; it merely requires allegations that raise a right to relief above the speculative level).

Plaintiff's allegations of the Complaint satisfy the pleading standard of <u>Twombly</u>.  Accordingly, Defendants' motions to dismiss and for judgment on the pleadings on the grounds the applicability of the exculpatory provisions of the Articles of Incorporation are hereby **DENIED**.

2.      <u>Applicability of Georgia's business judgment rule to allegations of ordinary negligence and breach of fiduciary duty based on ordinary negligence</u>

The Defendants argue that pursuant to Georgia's business judgment rule, officers and directors are insulated from liability for claims based on ordinary negligence and to the extent that Plaintiff has alleged claims for ordinary negligence and breach of fiduciary duty based upon ordinary negligence, these claims are not viable as a matter of law and should be dismissed.

Georgia law provides in relevant part that "Directors and officers of a bank

or trust company shall discharge the duties of their respective positions in good faith and with that diligence, care, and skill which ordinarily prudent men would exercise under similar circumstances in like positions."  O.C.G.A. § 7-1-490.  See also O.C.G.A. § 51-1-2 ("In general, ordinary diligence is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances. As applied to the preservation of property, the term 'ordinary diligence' means that care which every prudent man takes of his own property of a similar nature. The absence of such diligence is termed ordinary negligence.") The Court interprets this statutory language as an ordinary negligence standard of care.

The Defendants argue that: "[g]iven the standard of care set forth in these statutes, a cause of action for ordinary negligence against an officer or director exists, but only theoretically.  When Georgia's business judgment rule is applied to claims for ordinary negligence, Georgia courts hold that such claims are not viable."  (Def. reply [62] at 8).

As stated above, Defendants argue that the business judgment rule bars ordinary negligence claims in Georgia.  In support of their position, the Defendants cite the O.C.G.A. § 7-1-490,  Brock Built, LLC v. Blake,  300 Ga. App. 816, 821-822, 686 S.E.2d 425, 430 - 431 (2009); and Flexible Products Co. v. Ervast,

284 Ga. App. 178, 182, 643 S.E.2d 560, 564 - 565 (2007).

O.C.G.A. § 7-1-490 provides in relevant part that "[a] director or officer who so performs his duties [essentially in good faith] shall have no liability by reason of being or having been a director or officer of the bank or trust company."

In Brock Built, LLC v. Blake, 300 Ga. App. 816, 821-822, 686 S.E.2d 425, 430 - 431 (2009), the Georgia Court of Appeals explained the business judgment rule as follows:

> Georgia law requires that corporate officers and directors discharge their duties in good faith and with the care of an ordinarily prudent person in a like position. In determining whether a corporate officer has fulfilled his or her statutory duty, Georgia courts apply the business judgment rule. The business judgment rule affords an officer the presumption that he or she acted in good faith, and absolves the officer of personal liability unless it is established that he or she engaged in fraud, bad faith or an abuse of discretion:
>
>> The business judgment rule protects . . . officers from liability when they make good faith business decisions in an informed and deliberate manner. The presumption is that they have acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company. Unless this presumption is rebutted, they cannot be held personally liable for managerial decisions. However, officers may be held liable where they engage in fraud, bad faith, or an abuse of discretion.
>
> **Allegations amounting to mere negligence, carelessness, or "lackadaisical performance" are insufficient as a matter of law.**

(citations omitted, emphasis added)).

In <u>Flexible Products Co. v. Ervast</u>,  284 Ga. App. 178, 182, 643 S.E.2d 560, 564 - 565 (2007), the Georgia Court of Appeals stated:  "Georgia's business judgment rule relieves officers and directors from liability for acts or omissions taken in good faith compliance with their corporate duties. Such rule forecloses liability in officers and directors for ordinary negligence in discharging their duties.  '[O]rdinary diligence or negligence is what an ordinarily prudent man would do under the same circumstances . . . .' **Given that officers and directors thus are protected from liability for ordinary negligence**, the trial court erred in refusing to direct a verdict for [defendant] on [plaintiff's] ordinary negligence claim." (emphasis added).

The Plaintiff urges the Court to decline to delve into these fact issues at the motion to dismiss stage of the case. (Pl. Consol. Memo. [46] at 31.)  Plaintiff further states that in any event, the Complaint alleges facts showing that the Defendants are not protected by the business judgment rule.

One court has noted that it is considered "debatable" as to whether to apply the business judgment rule at the motion to dismiss phase of trial.  <u>See</u> <u>Court Appointed Receiver of Lancer Offshore, Inc. v. Citco Group Ltd.</u>, No. 05-60080, 2008 WL 926509, at * 4 (S.D. Fla. Mar. 31, 2008) ("Courts that have considered this

subject concur that it is 'debatable' whether a court should consider the protection of the business judgment rule on a motion to dismiss."). The Court notes that in the case *sub judice*, the business judgment rule has been raised as an affirmative defense in this case. The Eleventh Circuit has held that "[a] complaint is subject to dismissal under Rule 12(b)(6) when its allegations, on their face, show that an affirmative defense bars recovery on the claim." Cottone v. Jenne, 326 F.3d 1352, 1357 (11th Cir. 2003).

The Court finds that the allegations of the complaint indicate the existence of the business judgment rule affirmative defense so that it is proper to rule on the affirmative defense in the context of the present motion to dismiss.

The Court agrees that the Defendants' citation of authority is determinative. As stated above, the Georgia Court of Appeals has held that in the context of suits against officers and directors, "[a]llegations amounting to mere negligence, carelessness, or 'lackadaisical performance' are insufficient as a matter of law." Brock Built, 300 Ga. App. at 821-822. The Georgia Court of Appeals has also held that "officers and directors thus are protected from liability for ordinary negligence . . . . " Flexible Products, 284 Ga. App. at 182.[7]

---

[7]It is important to note that the Court recognizes the Plaintiff's citation of federal authority (Pl.'s Consol Memo [46] at 32) which indicates that the Defendants must first make a showing and/or demonstrate good faith before being entitled to assert the protection of the business judgment rule; however, in the more recent Georgia case law, cited above, it does not

In light of this authority and the application of the business judgment rule, the Court finds that the Plaintiff's claims for ordinary negligence and breach of fiduciary duty based upon ordinary negligence fail to state a claim upon which relief can be granted.  The Court finds that the Plaintiff's remaining claims for gross negligence and breach of fiduciary duty based upon gross negligence remain, as they encompass conduct which would fall beyond the ambit of the protections of the business judgment rule.

Accordingly, Defendants' motions to dismiss and for judgment on the pleadings on the grounds the applicability of the business judgment rule are hereby **GRANTED** as to the ordinary negligence and breach of fiduciary duty based upon ordinary negligence counts of the Complaint.

3.     Dates of service on the DLC.

In addition to joining in the above arguments, Defendants Arnold and Ballard contend that they cannot be held liable for losses associated with loans that were approved before or after their tenure on the DLC.  (Defs.' Mots. to Dismiss [30] at 2 and [32] at 3.)  The complaint is based on loans that were approved by the DLC between February, 2005 and May, 2007.  (Compl. [1] at 1.) Arnold served as a member of the DLC between May, 2003 and October, 2006.

---

appear that such a showing is required in the context of mere and/or ordinary negligence claims.

(Def. Arnold's Mot. to Dismiss [30] at 3.)  Ballard did not become a member of the DLC until May, 2006.  (Def. Ballard's Mot. to Dismiss [32] at 3.)

Defendant Arnold

As to Defendant Arnold, Plaintiff states that his tenure on the DLC is clearly alleged in the Complaint and the Complaint identifies the approval date and loss deficiencies for each of the Loss Loans.  Plaintiff further states, "[f]rom these allegations, Arnold can readily determine the nature and extent of the FDIC-R's claims against him.  Arnold is not being sued for loans approved after he was no longer a director or DLC member, so there are no claims actually being asserted against him that are subject to dismissal."  (Id.)

In response, Defendant Arnold states that "[t]his concession is necessary but not sufficient," in that the Complaint makes undifferentiated allegations regarding Defendants and seeks joint and several damages for the entire alleged loss.  (Def. Reply [61] at 15.)  The Court agrees.

The Court finds that the Plaintiff's have failed to state a claim against Defendant Arnold for loans approved after he was no longer a member of the DLC (October 2006 and thereafter) – specifically, the following loans: (1) Fischer Crossing Development, origination November 14, 2006; (2) Chrisly Family Trust, origination November 17, 2006; (3) LN Financial, origination, November 20, 2006;

(4) LKC, LLC, origination, December 7, 2006; (5) LN Citrus Grove, origination, December 28, 2006; (6) LN Financial, origination, December 28, 2006; (7) LN Groveland, origination, February 21, 2007; (8) Triple N Co., Inc, origination, April 17, 2006; (9) Deepwater Holdings, origination May 2, 2007; (10) Diversified Executive Crestview, origination, February 14, 2007, (11) Diversified Executive Myrtle Beach, origination, February 14, 2007, and (12) Urban Blu, LLC, origination, January 24, 2007.  The Plaintiff's claims against Defendant Arnold as to the remaining loans cited in the Complaint remain.

    Defendant Ballard

    In response to the Defendant Ballard's argument, Plaintiff states that "Ballard was the loan officer in charge of six of the eight Loss Loans approved by the DLC prior to his becoming a member of the DLC.  As Senior Lender and loan officer, Ballard owed duties of care and competence to the Bank which he breached by creating and allowing many of the lending deficiencies and risks present in the Loss Loans, including in those Loss Loans approved before Ballard became a DLC member." (Pl.'s Response [46] at 35.)  Plaintiff states that Ballard "owed the Bank fiduciary duties of loyalty, honesty, and care which he breached both before and after he became a member of the DLC." (Id.)

    Defendant Ballard states that the Plaintiff's argument suffers from a

temporal disconnect in that Ballard did not assume the title of Senior Lender until February 2006, after most of the loans at issue were approved by the DLC. (Def. Reply [61] at 12 and Compl. [1] at ¶6). Defendant Ballard also argues that the allegations of the Complaint fail to aver any involvement by Ballard in the June 2, 2005, July 29, 2005, August 24, 2005, and October 24, 2005 loans. (Id.) Defendant Ballard further states that the Complaint alleges that the DLC "was given the duty to 'approve all loans and/or loan relationships in excess of $500,000." (Compl. [1] at ¶ 13).

The Court agrees that based on the dates of service of Defendant Ballard and the time he assumed the title of Senior Lender, the Plaintiff has failed to state a claim against Defendant Ballard for the loans which were approved prior to his joining the DLC in May 2006 – specifically, the following loans: (1) Q4 Industries, June 2, 2005 origination; (2) Diversified Executive Crestview, July 19, 2005 origination; (3) Diversified Executive Crestview, February 4, 2005 origination; (4) Diversified Executive Crestview, December 14, 2005 origination; (5) Diversified Executive Myrtle Beach, July 29, 2005 origination; Diversified Executive Myrtle Beach, February 2, 2006 origination; Urban Blu, LLC, August 24, 2005 origination; and Urban Blu, LLC, October 24, 2005 origination. The Court is unable to uphold the Plaintiff's arguments to the contrary. The Plaintiff's claims against Defendant

Ballard as to the remaining loans cited in the Complaint remain.

## II.   Plaintiff's Motion To Strike

### A.   Standard

Plaintiff has filed a motion to strike certain affirmative defenses asserted by defendants in their Answer.  (Pl.'s Mot. to Strike [45].)  Specifically, Plaintiff moves to strike Defendants' first, third, eighth, twelfth, and fourteenth affirmative defenses relating to – causation, failure to mitigate damages, reliance on bank examiners, the exculpation clause in Integrity's articles, and estoppel.  (Id. at 1-2.)  According to Plaintiff, each of these defenses is insufficient as a matter of law.  (Pl.'s Br. in Supp. of Mot. to Strike [45] at 1-3.)

Plaintiff's motion is governed by Rule 12(f) of the Federal Rules of Civil Procedure.  See FED. R. CIV. P. 12(f).  Rule 12(f) permits the Court to strike from a pleading any "insufficient defense" or otherwise "redundant, immaterial, [or] impertinent" matter.  Id.  Motions to strike generally are disfavored.  Resolution Trust Corp. v. Youngblood, 807 F. Supp. 765, 769 (N.D. Ga. 1992)(O'Kelley, J.).  They are not the proper vehicle for resolving disputed issues of fact, or for deciding "substantial questions of law."  Id.  However, a defense that is insufficient as a factual and legal matter "should be stricken to eliminate the unnecessary delay and expense of litigating it."  Id.

**B.    Specific Defenses**

    1.    <u>Exculpation</u> – <u>(Twelfth Defense)</u>

In their Answer, Defendants cite the exculpatory provision in Integrity's articles in support of an "exculpation" defense. (Answer [29] at 7.) Plaintiff urges the Court to strike the exculpation defense.  (Pl.'s Br. in Supp. of Mot. to Strike [45] at 23.)   According to Plaintiff, the defense is insufficient as a matter of law because:  (1) the Georgia statute that authorizes such provisions does not apply to claims brought by the FDIC-R, and (2) the exculpatory clause is preempted by FIRREA to the extent that it immunizes Defendants from liability for gross negligence.  (<u>Id.</u>)

In light the above analysis regarding the exculpatory clause, the Court finds that the FDIC-R is not subject to the limitation of personal liability provided for in O.C.G.A. § 7-1-493.   The Court is unable to uphold the Defendants legal standard and prejudice arguments to the contrary. <u>Manhattan Const. Co. v. McArthur Elec., Inc.</u>, No. 1:06-cv-1512, 2007 WL 295535, * 6 (N.D.Ga. Jan. 30, 2007) (noting court's "broad discretion" in determining whether to grant or deny these motions to strike . . . .").  Accordingly, the Court **GRANTS** the FDIC's motion to strike the exculpation defense as inapplicable or ineffective.

    2.    <u>Failure To Mitigate, Estoppel And Reliance</u>

In several other asserted defenses, Defendants suggest that Plaintiff's recovery in this case should be reduced or precluded as a result of Plaintiff's own conduct with regard to Integrity. (Answer [29] at 1-6,8.) Specifically, Defendants claim that Plaintiff's "lax oversight" and "arbitrary" regulatory constraints, including the demand that Defendants write down or devalue certain loans, contributed to Integrity's failure. (Id. at 1-6.) Defendants further contend that, after Integrity's failure, Plaintiff neglected or refused to take appropriate steps to mitigate the resulting damages. (Id. at 6.) Due to these and other failures, Defendants argue that Plaintiff's claims are barred, in whole or in part, under the doctrines of estoppel and reliance and by the application of Georgia law imposing a duty to mitigate damages. (Id. at 6, 8.)

To the extent that the above defenses are based on the pre-receivership regulatory conduct of the FDIC in its corporate capacity, they must be stricken. The FDIC has the authority to serve in two separate and legally distinct capacities: (1) in its corporate capacity as an insurer of deposits and a regulator of member banks (the "FDIC-C") and (2) in its receivership capacity as a receiver of failed banks (the "FDIC-R"). Harrison, 735 F.2d at 412; see also Youngblood, 807 F. Supp. at 771 ("Congress has authorized the [FDIC] to act both . . . as an insurer or regulator, and in a separate capacity as a receiver."). It is well-established that

"any affirmative defenses based upon pre-receivership regulatory conduct [must] be asserted against the [FDIC] in its corporate capacity." Id. See also FDIC v. Bernstein, 944 F.2d 101, 106 (2d Cir. 1991)("Because they are discrete legal entities, 'Corporate FDIC is not liable for wrongdoings by Receiver FDIC'" and vice versa)(quoting FDIC v. Roldan Fonseca, 795 F.2d 1102, 1109 (1st Cir. 1986)).

Plaintiff brought this action in its capacity as receiver for Integrity. (Compl. [1] at 1.) The FDIC in its corporate capacity (the FDIC-C) is not a party before the Court, and its actions cannot properly form the basis of affirmative defenses asserted against Plaintiff in its receivership capacity. Youngblood, 807 F. Supp. at 771. Accordingly, the Court **GRANTS** Plaintiff's motion to strike the failure to mitigate, estoppel and reliance defenses asserted in the Answer, to the extent that those defenses are based on the pre-receivership conduct of the FDIC-C in its regulatory capacity.[8]

Prior to 1994, the majority rule would have required the Court to strike these defenses in their entirety, even if they were based in part on Plaintiff's post-receivership actions. Id. at 772-74. See also FDIC v. Bierman, 2 F.3d 1424, 1438-39 (7th Cir. 1993)(holding that affirmative defenses such as failure to mitigate may

---

[8]The Court notes that Defendants did not specifically address the dual capacity argument in its brief, even though it was raised by Plaintiff in its motion at Doc. No. 45-1, 12.

not be asserted against the FDIC in its receivership capacity) and <u>FDIC v. v. Mijalis</u>, 15 F.3d 1314, 1323 (5th Circuit)("The great majority of the district courts is in accord with the conclusion reached by the <u>Bierman</u> court."). The pre-1994 rule categorically precluded the directors of a failed bank from asserting such defenses against the FDIC. <u>Bierman</u>, 2 F.3d at 1438. The courts that developed the rule insulated the FDIC from these defenses as a matter of federal common law, reasoning that: (1) the FDIC owes no duty to former directors of a failed bank, (2) public policy dictates that the directors who allegedly caused the bank failure bear the risk of any errors of judgment, and (3) the FDIC's discretionary conduct within the meaning of the Federal Tort Claims Act (FTCA) in fulfilling its statutory mandate is not subject to judicial second-guessing. <u>Id.</u> at 1438-39 and <u>Mijalis</u>, 15 F.3d at 1323-24.

The Supreme Court called this reasoning into question in its 1994 decision, <u>O'Melveny & Myers v. FDIC</u>, 512 U.S. 79 (1994). In <u>O'Melveny</u> the FDIC, acting in its capacity as receiver for a failed bank, sued a third party law firm alleging professional negligence and breach of fiduciary duty in the firm's representation of the bank. <u>O'Melveny</u>, 512 U.S. at 81-82. The Ninth Circuit held that federal common law governed whether the knowledge of bank officers acting against the bank's interest would be imputed to the bank, and whether such knowledge could

be used as the basis of an estoppel defense against the FDIC as receiver.  Id. at 83.

The Supreme Court reversed, holding that with rare exceptions "there is no

federal general common law."  Id.  The Court explained that, except as otherwise

delineated in FIRREA, state law governs the FDIC's rights and liabilities as

receiver.  Id. at 88.

Following O'Melveny, many district courts have reconsidered whether

federal common law can be applied to insulate the FDIC from affirmative

defenses that are otherwise available under state law.  See FDIC v. Gladstone, 44

F. Supp. 2d 81, 85-87 (D. Mass 1999) and FDIC v. Raffa, 935 F. Supp. 119, 124-26

(D. Conn. 1995).  Some courts have distinguished cases in which the FDIC's own

conduct is at issue from the facts in O'Melveny, which involved the conduct of a

third party law firm.  See Raffa, 935 F. Supp. at 124 - 26 and FDIC v. Healey, 991

F. Supp. 53, 61 (D. Conn. 1998).  These courts have held that federal common law

survives in those cases where the FDIC's own conduct is at issue because of the

potential for a "significant conflict" between the federal interests at stake and state

law affirmative defenses that permit or require judicial scrutiny of the FDIC's

discretionary actions.  See Healey, 991 F. Supp. at 61.

Applying O'Melveny more broadly, other courts have held that the FDIC

in its receivership capacity is subject to state law affirmative defenses except when

FIRREA expressly provides otherwise.  <u>Gladstone</u>, 44 F. Supp. 2d at 86.  <u>See</u> <u>also</u> <u>Ornstein</u>, 73 F. Supp. 2d 282, 284 (E.D.N.Y. 1999).   These courts emphasize <u>O'Melveny's</u> clearly expressed rejection of the notion that federal common law should apply in an area that is otherwise governed by the detailed and comprehensive statutory scheme of FIRREA.  <u>Gladstone</u>, 44 F. Supp. 2d at 86.  As one court summarized the primary holding of <u>O'Melveny</u>:

> FIRREA includes a number of tailored rules to be applied in suits by federal receivers, yet it does not include a provision barring the [various] affirmative defense[s] of [state law].  "What Congress chose to put in is to be enforced, and what it left out is not to be added by judicial fiat."

<u>Ornstein</u>, 73 F. Supp. 2d at 284 (quoting <u>RTC v. Liebert</u>, 871 F. Supp. 370, 372 (C.D. Cal. 1994)).

Given the language of <u>O'Melveny</u> concerning the limited role of federal common law and the proper interpretation of FIRREA, the arguments that Plaintiff makes concerning the <u>O'Melveny</u> case are not entirely persuasive.  At the very least, the Court finds that the split authority, absence of Eleventh Circuit and Georgia precedent, and the holding of the <u>O'Melveny</u> case raise a substantial legal issue concerning the validity of the affirmative defenses at issue, which should not be decided on a motion to strike.  <u>Youngblood</u>, 807 F. Supp. at 769; <u>see</u> <u>also</u> <u>FDIC v. Pelletreau & Pelletreau</u>, 965 F. Supp. 381, 389 (E.D. N.Y. 1997)(a motion to strike should be denied where the defense at issue raises a substantial question

of law, the "resolution of which could allow the defense to succeed"). Accordingly, Plaintiff's motion to strike the failure to mitigate, estoppel and reliance defenses is **DENIED** to the extent those defenses are based upon post-receivership conduct by Plaintiff in its capacity as receiver.

3.    Causation

Finally, Defendants assert a causation defense, which is primarily based on allegations concerning the FDIC-C's pre-receivership conduct. (Answer [29] at 2-5.) In particular, Defendants suggest that the FDIC-C contributed to Integrity's failure by tacitly approving Integrity's business plans and loan portfolio between 2004 and 2007, and then abruptly downgrading Integrity's assets and forcing it to write down loans in the midst of the financial crisis that erupted in mid-2007. (Id. at 4-5.) According to Defendants, Integrity would still be in operation if not for the FDIC-C's "capricious" regulatory decisions, which depleted Integrity's capital and rendered it unable to attract new investors.  (Id. at 5.)

Like the affirmative defenses discussed above, Plaintiff moves to strike the causation argument on the basis of: (1) the pre-1994 majority rule precluding bank directors from relying on the FDIC's conduct as a defense to liability, and (2) the legal distinction between the FDIC-C and the FDIC-R.  (Pl. Br. in Supp. of Mot. to Strike [45] at 5-28.)  As the Court has explained, the pre-1994 majority rule is of

30

questionable validity following the Supreme Court's decision in O'Melveny. Given the uncertain state of the law on the issue, the rule does not support the FDIC's motion to strike. Youngblood, 807 F. Supp. at 769.

Likewise, Plaintiff's dual capacity argument does not support a ruling in its favor on the motion to strike on this issue. As Plaintiff points out, causation is not technically an affirmative defense, but rather an element of plaintiff's *prima facie* case. (Id. at 29.) Thus, the causation "defense" does not fit neatly into the dual capacity rule discussed above. Indeed, while defendants cannot assert an affirmative defense against or based on the conduct of the FDIC-C, an entity that is not properly before the Court, the murkier question is whether defendants can rely on the FDIC-C's conduct to rebut causation or offer an alternative theory of causation.

The Court thinks it proper that additional briefing be held on this question. The Court also notes that Plaintiff has suggested that Defendants should implead the FDIC-C if they intend to argue that its pre-receivership actions caused Integrity's failure. (Pl.'s Br. in Supp. of Mot. to Strike [45] at 29.) The Court makes no ruling to this regard.

As a result of the unresolved legal issues, there is no basis for striking the causation argument asserted in the answer. Youngblood, 807 F. Supp. at 769.

31

Plaintiff's motion to strike the causation defense is therefore **DENIED**.   In the interest of providing some guidance to the parties, the Court notes that the following issue remains to be decided:  whether and to what extent Defendants can rely on the FDIC-C's pre-receivership conduct to rebut causation or to support an alternative theory of causation.  If that issue is not addressed on summary judgment, the Court will likely request additional briefing from the parties prior to trial.

## III.   Remaining Motions

In conjunction with their motions to dismiss, Defendants Skow, Arnold, Ballard, and Day filed a motion to stay discovery pending the Court's ruling on  all pending dispositive motions.  (Def. Mot. to Stay [48].)  As the Court has now ruled on said motions, Defendants' motion to stay pending that ruling [48] is **DENIED as moot**.

Plaintiff opposed Defendants' motion for a stay, and subsequently filed a motion for a scheduling order concerning discovery.  (Pl. Resp. to Mot. to Stay [58] and Mot. for Scheduling Order [74].)  In its motion for a scheduling order, Plaintiff indicates that the parties have agreed to an eight month discovery period, given the scope and complexities of the case.  (Pl. Br. in Supp. of Mot. for Scheduling Order [74] at 2.)  A review of the record shows that it appears that some discovery has already commenced in this case; however, the Court finds that discovery should

officially commence on the date of entry this order.  Accordingly, the Court

**GRANTS** Plaintiff's motion for a scheduling order concerning discovery **as**

**modified** by the following changes:

1.    The period for fact discovery will officially commence on the entry date of this order and will conclude on or before **August 28, 2012.**

2.    The FDIC shall disclose all experts that may testify at trial and produce the Rule 26(f) report of identified experts no later than **August 28, 2012**

3.    Defendants shall disclose all experts that may testify at trial and produce the Rule 26(f) report of identified experts no later than **September 28, 2012.** All expert depositions shall be completed by **October 28, 2012.**

4.    The number of depositions shall not be limited to the amount set forth in Federal Rule of Civil Procedure 30(a)(2)(A)(i).

5.    <u>Daubert</u> motions with regard to expert testimony shall be filed no later than the date on which the proposed pretrial order is submitted.

The parties' Joint Motion for Status Conference [83] to address discovery

scheduling is hereby **DENIED** as moot.


## <u>CONCLUSION</u>

For the foregoing reasons, the Court **GRANTS** *in part* **and DENIES** *in part*

Defendants Skow's, Arnold's, Ballard's, and Day's Motions to Dismiss [28], [30],

[32]; and [36], **GRANTS** *in part* **and DENIES** *in part* Defendants Ernest's,

Hartsfield's, Murphy's, and Reynolds's Motion for Judgment on the Pleadings [33].

The Court hereby **DISMISSES** Plaintiff's claims for ordinary negligence and breach of fiduciary duty based upon ordinary negligence.  The Court hereby **DISMISSES** Plaintiff's claims against Defendant Arnold for loans approved after he was no longer a member of the Director Loan Committee, specifically October 2006 and thereafter.  All other claims against Defendant Arnold remain.  The Court hereby **DISMISSES** all claims against Defendant Ballard for loans approved prior to his joining the Director Loan Committee in May 2006.   All other claims against Defendant Ballard remain.  The Court hereby **GRANTS in part** Plaintiff's Motion to Strike [45](and hereby strikes the Defendant's twelfth defense (exculpation)) and the failure to mitigate, estoppel and reliance defenses to the extent they are based upon pre-receivership conduct of the FDIC-C in its regulatory capacity) and **DENIES in part** Plaintiff's motion (as to the remaining defenses).  The Court **DENIES as moot** Defendants' Motion to Stay Discovery [48] and the Joint Motion for Status Conference [83]; and **GRANTS as modified** herein, Plaintiff's Motion for Scheduling Order [74].

**SO ORDERED**, this 27th day of February, 2012.

s/Steve C. Jones
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE